UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA HUTCHINSON,<br><br>                Plaintiff,<br><br>    vs.<br><br>STERLING INFOSYSTEMS, INC.,<br><br>                Defendant. | Civil Case No.: 1:24-cv-00630<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Jessica Hutchinson ("Plaintiff" or "Ms. Hutchinson") by and through her counsel brings the following Complaint against Sterling Infosystems, Inc., ("Defendant" or "Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a fraudster, convicted felon, and convicted misdemeanant.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff was convicted of a felony for obtaining money by false pretenses, a felony for making a false statement, and two misdemeanors for obtaining money by false pretenses.

1

4. Defendant's reporting is grossly inaccurate and untrue.

5. Plaintiff has never been charged, let alone convicted of a felony in her life.

6. Plaintiff's employer revoked Plaintiff's access to the employment platform which allowed Plaintiff to book employment after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor and felony convictions, which do not belong to Plaintiff.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Spotsylvania and Stafford, Virginia regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to her employer.

8. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their name, social security number, and address information.

9. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

14. Jessica Hutchinson ("Plaintiff" or "Ms. Hutchinson") is a natural person residing in Long Island City, Queens, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant Sterling Infosystems, Inc. ("Defendant" or "Sterling") is a New York corporation doing business throughout the United States, including in this District, and has a principal place of business located at 249 West 17th Street, Floor 6, New York, NY 10011.

16. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment

purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

5

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

6

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different name, social security number, and address history than Plaintiff.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**A.     Plaintiff's On-Demand Employment With Rover**

41. Plaintiff has been providing pet care services on Rover since 2021.

42. Rover is an American company which operates an online marketplace for consumers to find and book pet care services, including pet sitting, dog boarding, and dog walking.

43. Over the years, Plaintiff has established a successful profile on Rover. Plaintiff has succeeded in securing several loyal clients during her tenure with Rover.

44. Like other on-demand companies, Rover requires pet sitters to pass a background check to initiate and later continue their eligibility for on-demand employment with Rover.

45. Plaintiff's continued eligibility for on-demand employment with Rover was conditioned upon Plaintiff passing a background check ("employment report.")

**B.     Defendant Published an Inaccurate Background Check Report to Rover**

46.     Rover contracted with Defendant to conduct background checks, including criminal background checks, on its employees.

47.     On December 5, 2023, Rover ordered a criminal background check on Plaintiff from Defendant.

48.     On December 7, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Rover.

49.     Within that employment report, Defendant published inaccurate information about Plaintiff.

50.     Specifically, Defendant's employment report about Plaintiff included four grossly inaccurate and stigmatizing misdemeanor and felony convictions from Spotsylvania and Stafford, Virginia, which appeared in the employment report as follows:

| County Court Search—Shanks, Tiffany A, VA-SPOTSYLVANIA | | CONSIDER |
|---|---|---|

**Data As Provided**

| | |
|---|---|
| Last Name | Shanks |
| First Name | Tiffany |
| Middle Name | A |
| SSN | XXX-XX-XXXX |
| DOB | XXXX-XX-XX |
| Race | Unknown |
| Gender | Unknown |
| Jurisdiction | VA-SPOTSYLVANIA (3008) |

**Verified Data**

| | |
|---|---|
| Report requested on: | 2023-12-05 |
| Report completed on: | 2023-12-06 |
| Case Number | CR20002006-00 |
| File Date | 2020-12-17 |
| Last Name | SHANKS |
| First Name | TIFFANY |
| Middle Name | ALEXIS |
| DOB | XXXX-XX-XX |
| Case Type | Conviction |
| Case Level | Felony |
| Filed Date | 2020-09-28 |
| Disposition Date | 2021-03-02 |
| Additional Info | Address : , Fredericksburg, 22401, VA, US |

**Charges**

| | |
|---|---|
| Violation Date | 2020-03-27 |
| Type | Felony |
| Original Charge | Obtaining Money By False Pretenses |
| Disposition | Guilty |
| Sentence | Type: Costs<br>Suspended: No<br>Fine Amount: $1,018.00<br><br>Type: Confinement<br>Length: 1 Years<br>Other: Suspended duration=1 Years<br><br>Type: Probation<br>Suspended: No<br>Length: 5 Years<br>Other: PROBATION TYPE : INDEFINITE SUPERVISION |
| Comments | Charge Statute: 18.2-178 |

9

| | |
|---|---|
| Case Number | CR20002007-00 |
| File Date | 2020-12-17 |
| Last Name | SHANKS |
| First Name | TIFFANY |
| Middle Name | ALEXIS |
| DOB | XXXX-XX-XX |
| Case Type | Conviction |
| Case Level | Misdemeanor |
| Filed Date | 2020-09-28 |
| Disposition Date | 2021-03-02 |
| Additional Info | Address : , Fredericksburg, 22401, VA, US |

**Charges**

| | |
|---|---|
| Violation Date | 2020-03-27 |
| Type | Misdemeanor |
| Original Charge | Obtain Money By False Pretenses Less Than $200.00 |
| Disposition | Guilty |
| Sentence | Type: Jail<br>Length: 12 Months<br>Other: Suspended duration=12 Months<br><br>Type: Probation<br>Suspended: No<br>Length: 5 Years<br>Other: PROBATION TYPE : INDEFINITE SUPERVISION<br><br>Type: Costs<br>Suspended: No<br>Fine Amount: $817.00 |
| Comments | Charge Statute: 18.2-178 |

| | |
|---|---|
| Case Number | CR20002008-00 |
| File Date | 2020-12-21 |
| Last Name | SHANKS |
| First Name | TIFFANY |
| Middle Name | ALEXIS |
| DOB | XXXX-XX-XX |
| Case Type | Conviction |
| Case Level | Misdemeanor |
| Filed Date | 2020-09-28 |
| Disposition Date | 2021-03-02 |
| Additional Info | Address : , Fredericksburg, 22401, VA, US |

**Charges**

| | |
|---|---|
| Violation Date | 2020-03-27 |
| Type | Misdemeanor |
| Original Charge | Obtain Money By False Pretenses Less Than $200.00 |
| Disposition | Guilty |
| Sentence | Type: Costs<br>Suspended: No<br>Fine Amount: $817.00<br>———<br>Type: Probation<br>Suspended: No |
| | Length: 5 Years<br>Other: PROBATION TYPE : INDEFINITE SUPERVISION<br>———<br>Type: Jail<br>Length: 12 Months<br>Other: Suspended duration=12 Months<br>——— |
| Comments | Charge Statute: 18.2-178 |

11

| County Court Search—Shanks, Tiffany A, VA-STAFFORD | | CONSIDER |
|---|---|---|

**Data As Provided**

| | |
|---|---|
| Last Name | Shanks |
| First Name | Tiffany |
| Middle Name | A |
| SSN | XXX-XX-XXXX |
| DOB | XXXX-XX-XX |
| Race | Unknown |
| Gender | Unknown |
| Jurisdiction | VA-STAFFORD (3009) |

**Verified Data**

Report requested on: 2023-12-05
Report completed on: 2023-12-06

| | |
|---|---|
| Case Number | CR22000510-00 |
| File Date | 2022-06-17 |
| Last Name | SHANKS |
| First Name | TIFFANY |
| Middle Name | ALEXIS |
| DOB | XXXX-XX-XX |
| Case Type | Conviction |
| Case Level | Felony |
| Filed Date | 2022-05-03 |
| Disposition Date | 2022-08-25 |
| Additional Info | Address : , Fredericksburg, 22406, VA, US |

**Charges**

| | |
|---|---|
| Violation Date | 2021-11-09 |
| Type | Felony |
| Original Charge | False Statement On Criminal History Consent |
| Disposition | Guilty |
| Sentence | Type: Probation<br>Suspended: No<br>Length: 5 Years<br>Other: PROBATION TYPE : INDEFINITE SUPERVISION |
| | Type: Confinement<br>Length: 2 Years<br>Other: Suspended duration=2 Years |
| | Type: Costs<br>Suspended: No<br>Fine Amount: $403.00 |
| Comments | Charge Statute: 18.2-308.2:2 |

51. The criminal convictions reported by Defendant about Plaintiff to Rover *do not* belong to Plaintiff.

52. Plaintiff has never been charged with or convicted of a felony in her life.

53. A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated female, Tiffany Alexis Shanks ("Convicted Felon Shanks").

54. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the four convictions, it would have seen obvious discrepancies between Convicted Felon Shanks and Plaintiff.

55. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Shanks include the following:

    (a) Plaintiff's legal name is "Jessica Hutchinson;" however, the criminal records belong to one "Tiffany Alexis Shanks," which information is both clearly indicated on the face of the employment report and in the widely available public records from Stafford and Spotsylvania, Virginia;

    (b) Plaintiff had never lived in Virginia, yet the underlying public court records regarding the four criminal convictions indicate that Convicted Felon Shanks resided in Fredericksburg, Virginia at the time she committed the offenses; and,

    (c) Plaintiff's Social Security number, which was provided to Defendant and is contained on the face of the subject employment report, is entirely different than that of Convicted Felon Shanks.

56. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum

possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's employer.

57. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different name than Plaintiff, a different Social Security Number, and whose address information is entirely different than Plaintiff's.

58. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**C.    Rover Suspended Plaintiff's On-Demand Employment Eligibility**

59. On December 7, 2023, Plaintiff was notified by Rover, via email, that she was deactivated from their platform as a direct result of the misdemeanor and felony convictions reported by Defendant.

60. As a result, Plaintiff was barred from securing any new on-demand Rover employment indefinitely.

61. Plaintiff was completely perplexed by the suspension of her account. She had successfully secured employment with Rover for years and was expecting to be gainfully employed throughout the holiday season.

62. Moreover, Plaintiff also had regular clients who depended on her availability and on her being dependable and reliably available.

63. Plaintiff further anticipated that she would receive increased bookings for her pet-sitting services over the holiday season.

64. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Shanks, were published in the employment report Defendant sold about Plaintiff to Rover.

65. Plaintiff was panicked, confused, and concerned about the impact of Convicted Felon Shanks' serious criminal convictions reported on the subject employment report – specifically, the impact of the same on her future. In fact, Plaintiff began to speculate that her identity was stolen, or that she was considered to be a fugitive of the law.

66. Plaintiff could not fathom how four criminal records that didn't belong to her came to be associated with her on the background check report. Plaintiff was confused by the reporting and even feared that she was at risk of being arrested.

67. Defendant had matched Plaintiff and Convicted Felon Shanks and published the criminal records of Convicted Felon Shanks onto the employment report about Plaintiff and sold that report to Plaintiff's employer. This exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's employment report to Rover, but Defendant failed to perform even a cursory review of such information.

**D.     Plaintiff Disputed the Misinformation in Defendant's Employment Report**

68. On December 7, 2023, desperate to re-secure employment with Rover and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

69. In her dispute to Defendant, Plaintiff identified herself and provided information to Defendant to support her dispute.

70. Plaintiff specifically disputed the criminal records of Convicted Felon Shanks.

71. Plaintiff specifically stated that the criminal records of Convicted Felon Shanks do not belong to Plaintiff.

72. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Shanks' criminal records from any employment report about Plaintiff.

73. During that call, Plaintiff was informed by Defendant's representative that this was their mistake as they had run the last four digits of Plaintiff's social security number, and included in the employment report all matches thereto.

74. On December 7, 2023, Plaintiff called Rover and explained that Sterling was mistaken in its reporting.

75. Notwithstanding, Rover informed Plaintiff that until the report was corrected, her account would remain in a suspended status and that if the report was not corrected soon, her account would be deleted.

76. This was terribly distressing to Plaintiff because she had spent two years building her account profile and securing positive reviews.  If the account was deleted, she would have to start all over and would likely lose her regular clients.

77. On December 7, 2023, Plaintiff received Defendant's dispute response purporting that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by communicating its removal of the criminal records from the subject employment report.

78. Defendant also communicated to Plaintiff that it had issued a corrected employment report to Rover.

79. However, Plaintiff was still not able to regain access to her Rover account on that date.

16

80. On December 11, 2023, still without access to Rover, Plaintiff contacted Rover to see when she would have access to her account. In response, Rover stated that it needed to first receive an updated report from Defendant and that it could likely take approximately five days for Plaintiff to regain access to her Rover account and employment.

81. Finally, on December 13, 2023, Plaintiff's Rover account was re-activated.

82. Due to Defendant's false report, Plaintiff's Rover account was deactivated for approximately seven days during the busy holiday season, when many Rover users would have been booking pet sitting while they were away on vacation. Plaintiff reasonably believes that she lost out on a number of valuable bookings and thereby sustained material loss of income.

83. Additionally, Plaintiff reasonably believes that, as a result of her being suspended from her Rover account due to Defendant's inaccurate reporting and her unavailability during that time-period, a client who had regularly booked her pet-witting services over the course of the previous year suddenly lost interest and ceased to book her services.

84. Although the Rover income constitutes a minority share of Plaintiff's annual income, Plaintiff's financial footing, like many Americans, is precarious, and she relies on such income to survive financially.

85. Plaintiff's allocation of her Rover-generated income traditionally included such items as making timely payments on student loans as they come due, as well as helping her cover routine medical bills.

86. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

87. As a result of Defendant's violations of the FCRA, Plaintiff has suffered from a great deal of worry over the status of her employment eligibility with Rover. Plaintiff worried that she would lose booking opportunities during the holiday season – upon which income-generation she desperately relies. Further, Plaintiff worried that her Rover account would be deleted, which would mean that she would lose her loyal customers as well as the ratings she had built up over the two years. This was especially exacerbated as the competition on the app has drastically increased, which would have made it incredibly difficult to re-build the clientele and ratings from scratch.

88. As a further result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

90. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

91. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

92. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

93. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

94. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

95. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b)  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d)  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: January 29, 2024
New York, New York

**CONSUMER ATTORNEYS**

By:  */s/ Levi Y. Eidelman*
Levi Y. Eidelman, NY Bar No. 5742499
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
T: (718) 360-0763
F: (718) 715-1750
E: leidelman@consumerattorneys.com

*Attorneys for Plaintiff Jessica Hutchinson*

20